Good afternoon. This is the time set for argument in Close v. City of Vacaville, and you may proceed on behalf of the plaintiffs. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the Court. My name is Donya Hoffner, and along with my co-counsel, Brett Lauderman, I represent the plaintiff in this matter, Ms. Lisa Close. I will limit my discussion of the false arrest claim to five minutes, and Mr. Lauderman will address the excessive force claim with seven minutes of our remaining time. I would like to reserve three minutes for rebuttal. The District Court's grant of summary judgment in favor of Officer Tan should be reversed for the following reasons. First, unambiguous statutory language constitutes clearly established law, even in the absence of relevant case law. Under the plain meaning of California Penal Code Sections 602, Subsection O and 602.1, Subsection A, the refusal of a request to move to a different part of the building of a business establishment does not constitute trespass. And this was clearly established at the time Officer Tan arrested Ms. Close. Second, given the undisputed facts of this case, a reasonably objective officer in Tan's position would believe that Close had not been asked by himself or by Sutter Health staff to leave the building. Officer Tan therefore lacked probable cause to arrest Ms. Close. To my first point, Officer Tan claims that a lack of a factually similar case requires that this court grant him qualified immunity for false arrest. However, the elements of a criminal statute in and of themselves may clearly establish a right to be free from unlawful arrest pursuant to that statute. An agilist case law is not required to overcome qualified immunity where said elements are plainly stated by the statute. As held in Shin v. City of Union City, it is enough that the statute's requirements are clear on its face and that the defendant was well outside those clear bounds when he arrested the plaintiff. As outlined in our briefing. Can I just ask a question? Because I mean, it's a novel theory you've raised on the false arrest issue. But what exactly do you think should have been done here other than arrest? I mean, it sort of feels like staff, private security guard, and then a police officer tried to do everything they possibly could other than arrest her. And she wasn't going to leave. I mean, what should they have done in these circumstances? Well, Your Honor, according to the statute, criminal trespasses where she would have received a request to leave Sutter Health. They only asked her to leave the exam room. And in fact, when Officer Tan approached her, he said that she could remain in the lobby as long as she left the room. It wouldn't have been any burden on them to say that if she's refusing to leave the room, then we're revoking our permission for her to remain in the building. So they could have simply asked her to leave Sutter Health. But wouldn't that have been even more? I mean, that would have been, I guess, a harsher outcome. They were trying to accommodate her and just get her out of the exam room so that they could use the exam room. They had other patients they had to treat. So why, I mean, I just don't understand what it is that they were supposed to do in these circumstances. It seems like they tried everything else. Well, Your Honor, they were allowing her to remain in the building as an accommodation with, sorry, excuse me. Because they needed the examination room, they were okay with her remaining in the building. They didn't have any reason for her to leave the building as long as they were able to use the examination room. However, if she was unable or unwilling to adhere to that condition, then they're free to revoke their permission for her to remain in the building. It may be harsh, but they're free to make that condition if they want. How do you deal with the first part of California Penal Code 6020, where they talk about any person intentionally interferes with a lawful business or occupation by obstructing or intimidating those trying to carry on the business? I mean, remaining in the room was interfering with the business. Excuse me, Your Honor, the language of that statute also requires a refusal to leave the premises of the business because she was allowed to remain in the lobby prior to Officer Tan arresting her. Then she never received a request to leave the premises. Insofar as intentional interference, Miss Close suffers from Asperger's syndrome. She informed Officer Tan where this is clearly stated on the body cam footage. There is serious question as to whether she had the requisite intent under that statute. Well, then that may be a defense to the arrest generally, but that doesn't make it a false arrest. I mean, seems like he had a basis to arrest her. Whether she should have been prosecuted, I suppose, is a different question. But you have an individual who is clearly interfering with the ability to conduct business. So anyway. Your Honor, I would like to very briefly address that point and then turn things over to my co-counsel. We would argue that because he was aware of her Asperger's syndrome, that he knew that the requisite intent was missing. And regardless of that intent, he knew that she was not requested to leave the premises. So he had actual knowledge that that element was missing. Thank you. You may proceed. Good afternoon, Your Honor. This is Brett Lauderman for Plaintiff Lisa Close. In granting Defendant Officer Tan summary judgment on Ms. Close's claim for excessive force, the District Court erred for two main reasons. First, the District Court improperly applied the summary judgment standard. And second, the District Court erroneously found that Ms. Close's right to be free from the level of force that Tan used against her was not clearly established at the time of her arrest in 2016. Additionally, Ms. Close has properly established a violation of her constitutional rights to be free from excessive force under the Fourth Amendment. Even when courts decide summary judgments solely under the second prong of qualified immunity, the court must adhere to the proper summary judgment standard. Under the Supreme Court's decision in Tolan v. Cotton, a court's failure to do so in and of itself constitutes reversible error, notwithstanding the clearly established law inquiry. In this case, the District Court erred in granting summary judgment because it resolved issues of disputed fact, disregarded important evidence, and failed to view the evidence in light most favorable to Close. Instead, the District Court got sidetracked about Close's choking allegation, drew inferences in favor of Tan, and disregarded substantial evidence, namely the fact that Tan broke Close's arm. Further, the District Court failed to credit Close's version of the facts, specifically with respect to the forceful and violent manner in which Tan removed Close from the exam room. Can I ask a question about that? Is this case as easy as just saying her arm was broken, therefore that satisfies an excessive force claim? Is that the end of the inquiry? No, Your Honor, that's not the end of the inquiry. However, looking at Tolan v. Cotton, when a court fails to credit or properly construe a material fact at summary judgment, even under the second prong, that constitutes reversible error. And in this court, under Lalone v. County of Riverside and Santos v. Gates, this court has held that when force is substantial enough to cause an injury, like a broken back or a broken arm, there is a reasonable inference that that force was not only substantial, but also excessive. The reason I'm asking the question is, this is a different case in the sense that we have the video footage. I've watched the video footage. If I were just to watch the video footage, I've got to be honest, I'm not sure I would have said that this was excessive force. However, she broke her arm, and apparently the officer recognized that. He said that at the time that he thought he broke her arm. So that's why I'm asking you, is that the beginning and the end of the inquiry? If you have someone who breaks their arm, is that by definition excessive force? I'm just wondering, it sounds like you're not asking us to make that holding or finding, and maybe that's not what the clearly established law says. That's why I'm asking the question, if we need to go further. Yeah, I guess a few responses. I mean, this court doesn't require an injury at all. This court has found excessive force in cases where there's no injury. Under the second prong of qualified immunity, the clearly established part, we've put forth a plethora of cases. But two that are really factually similar here that were decided before close's arrest, Meredith V. Erath and Hanson V. Black. And in those cases, there certainly wasn't a broken arm, and the court construed the right at issue based on the forceful twisting of the arm during the arrest. And here, I think, of course, we have the broken arm, and that's important. But you also have to look at it in conjunction with the way in which he extracted her from the exam room that's on the body camera footage. And while the body camera isn't perfect in depicting that, you see him towering over her while she's passively sitting on the floor. He's holding onto her with one arm, pulls her out of the room, drags her against a wall like a rag doll, takes her arm, twists it up to her neck behind her back with enough force to break it and cause soft tissue damage. And then, of course, you could hear the excruciating pain that she was in and then throw her to the ground. And if you look at Rice v. Morehouse that we cited in our 28-J letter, Mr. Rice didn't sustain a broken arm. He had other injuries. I'm not sure exactly what those are. This court doesn't explain exactly what they are. But he was taken down to the ground face first, pretty similarly to how Ms. Close was, and he didn't break an arm. And so I think based on that inference and based on the loan in Santos v. Gates, we can infer that a broken arm, in light of the totality of circumstances, is excessive force. And I think the crux of the issue here, under the second prong of qualified immunity, is how the district court construed the right at issue. The district court basically said Ms. Close didn't have the right to be free from a minimal amount of force instant to her arrest. And that's the problem here. We would urge this court to construe the right at issue, as the court did in Rice v. Morehouse and a progeny of cases before Rice, and that's the right to be free from non-trivial force in light of mere passive resistance. And so I think trivial force is pushes and shoves. And so anything more than that in light of passive resistance is going to be unreasonable and therefore excessive. So let's assume that she was trespassing and that the officer was justified in removing her from the room. What is the position where that could have been done constitutionally in these circumstances? So how could he have removed her from the room? They just couldn't do that at all here. They had to just let her stay. What was the least intrusive way of getting her to leave the room? So the least intrusive way would have been to let her do what she said she was going to do, and that would be to leave voluntarily. Well, I know, but with all due respect, she'd been asked that a dozen times already. And whether that was of her own choice or whether Asperger's interfered with that, that doesn't seem to be the strongest argument. Okay. And that's disputed in summary judgment. So, okay, to move on from that, in the defendant's briefing, they say that Officer Tan merely picked her up, assisted her off the floor, put her arm to the small of her back, arrested her, and escorted her out of the room. But that's not what happened in the body camera footage. That would have been a less intrusive but not least intrusive means. Perhaps more force would have been warranted, but she offers no physical resistance, no active resistance. It's all passive. And with that being said, I'd like to reserve the remainder of my time for rebuttal. Certainly. Thank you. You may proceed, Ms. Crawford. Thank you, Your Honors, and thank you for the opportunity to be here today. I'll begin by stating that it is unfortunate and regrettable that Ms. Close suffered an injury incident to her lawful arrest on the date of this incident. However, it's critical that the court not buy into the mischaracterization of the undisputed objective evidence presented by this case. As the evidence makes clear, there's simply no dispute of material fact, and as the district court determined, Officer Tan should be entitled to qualified immunity here. I'm going to ask you the same question. Why isn't the beginning and the end, at least as to excessive force, why isn't the beginning and end of the analysis, she broke her arm? That's the end of the story. That's enough to send it to a jury and get past qualified immunity. Sure. So it's my position, of course, that there was no violation of her Fourth Amendment rights. There was no excessive force. Officer Tan, again, I submit that he had probable cause to arrest her for trespassing, and with that comes a right to use reasonable force, and especially to overcome resistance. Plaintiffs go, or Ms. Close goes through great lengths to try to characterize her resistance as passive, and that as a result, the force used was, it didn't commiserate with the level of resistance she was offering, but as Your Honor has pointed out, she stayed in the room for over 22 minutes. She was asked to leave by multiple people. Officer Tan tried to have her leave voluntarily, and unfortunately, she resisted all efforts to have her leave voluntarily. So he was in the situation where he had the probable cause to make the arrest that carries with it the right to use a degree of force to effectuate that arrest and to overcome her resistance. This is something we should look at for the totality of the circumstances here. By her own admission, she grappled with him over that phone, and her way of trying to describe it and give different characterization of the facts in the declaration that she submitted, which I will argue, of course, that the district court properly determined was a sham affidavit because it contradicted discovery, deposition, and her complaint allegations. And the video. And the video. So as a result, Officer Tan, taking all the totality of the circumstances into consideration, there's no temporal break in the incident that we're dealing with here. He used reasonable force to effectuate the arrest. The fact that an injury occurred does not render the force excessive. That's what I want to focus on, because I'm not sure that's true. Is there a case where an arm has been broken? Let's assume, I mean, even if we deny qualified immunity, you go to a jury and the jury may look at this and say, look, you know, she was staying, she wouldn't leave, he had to get her out. But for purposes of qualified immunity, can you point me to a case where a party has had a broken arm, you know, pretty serious injury, and qualified immunity was still granted? I'm not aware of it. So I unfortunately cannot point you to a case right now. I will also just point out that it was undisputed that she suffered a fractured arm, not a broke, not a break. And again, just in doing the Fourth Amendment qualified immunity analysis for excessive force, plaintiff has the burden to show us that the law was clearly established to show Officer Tan what he was doing was unlawful. That's sort of my point, is that it seems like it was clearly established when every single case where there has been a fracture or a break, or even lesser injuries, excessive force has been found. I think we need to focus on the resistance being offered by the cases that have been put forth. Those cases where an injury was sustained, the person generally offered no resistance whatsoever. And then therefore, the use of force did not commiserate with the resistance. Here again, we need to look at the totality of the circumstances here. He tried to pull her arm. It doesn't seem to help you very much. She was a 120-pound, 60-year-old woman. I fail to see how that helps your cause. Well, I think that the force he tried to use was to pull her up off of the floor after ordering her to stand up and to put her hands behind her back to be able to escort her out of the room. She didn't do that. So after being in there for a protracted period of time, he pulled her up off the floor and tried to secure her in handcuffs. If we go back to the facts that were presented to the district court on summary judgment and you have the body cam footage, but then if you look at the facts and the evidence cited to try to create a disputed fact, they don't use the descriptions Ms. Close uses in her declaration. There just simply is no evidence there, other than the body cam footage, if you're saying that that's the only thing we're looking at. There's no evidence that they put forth on summary judgment or law to state that the law was clearly established to show that simply because she had the injury, that that was excessive. I think the question is whether it's a non-trivial use of force. And why isn't it a question of fact as to that, given her injury? Again, I think that we just have to look at the amount of resistance she was offering. He's entitled to use reasonable force to effectuate that arrest. Why isn't that a jury question? Because I think that the law here was not clearly established to show that Officer Tan, what he did in this situation was unlawful. He had clear probable cause for an arrest. He used minimal force to effectuate that arrest. And unfortunately, the injury occurred. But as Graham has held, every push or shove is not going to state that everything is, or that that's unnecessary or unreasonable force. Well, I agree with you on that. But I mean, how do you distinguish this case from, say, Meredith versus Eris and Hanson versus Black? So in Meredith, again, we see that Meredith was not even the focus of that warrant. This was one. It was a tax, improper tax filing or something that they were going to investigate. And Meredith was not offering any physical resistance. And instead, she was handcuffed, thrown to the ground, arms twisted behind her back. And she offered no physical resistance. I think that that's key here, is that the level of resistance offered by Close is not passive resistance. The case cited by Plaintiff, or by Ms. Close, the Rice case, you know, Rice was not offering any physical resistance. But then in distinguishing it, the court looked to the Supreme Court case of Emmons. And in that case, it was implicitly found that simply walking by an officer and disobeying orders could constitute more than passive resistance. And Ms. Close clearly did more than that in this instance. What do you mean by that? I mean, refusing to leave seems like it is passive resistance. I mean, where do you get beyond passive resistance on the back? So we have the fact beyond just refusing, beyond just the verbal, there's the protracted period of time. Officer Tan testified that her tone of voice and demeanor caused him a heightened concern for safety. She was holding her phone in her hand, which could be used as a weapon. We see on the video that she also clenched her fists. We see on the video that she refused to let go of that phone. And by her own admission and her testimony, she grappled with him over it. So she's defying orders. She's not complying with orders to try to leave the room voluntarily or to put down the phone or to stand up so he can secure her in handcuffs. He was, you know, he was trying everything he could to try to effectuate this arrest without using any force. And so there was no extraordinary level of force here used. This was minimal to address the resistance Ms. Close was putting forth in this situation. So if your client on the, as to the phone, I mean, he probably didn't have the right to seize the phone unless you're, unless he believes it's a weapon. And he actually then took it later. He seized it later. So is that the only justification for grabbing the phone? Is that he thought she might use it as a weapon? I think that that is a big part of the justification for taking it. He also, that was part of, as you probably saw in the video, she and her explanation as to why she wouldn't leave is because she wanted to finish her phone call. So based on the testimony we have, Officer Tan believed it could be used as a striking weapon. I don't, I could be speaking for him in this regard, but I don't, he could have thought maybe if we move the phone, she'll come with me. I'm not exactly sure on that situation, but from what we have that was presented on summary judgment, he believed it could be used as a striking weapon. Judge Nelson had a question. Yeah. What do we do with the fact that she told the officer that she had Asperger's? And I know his defense is, well, I didn't understand what Asperger's was. Fair enough, perhaps. But she also said, look, I have a really, it was clear that she's having a really difficult time processing the situation. You know, she was not acting as a normal, I don't mean to be disparaging, but I mean, you might expect the average individual to have reacted differently. But it was clear that she was having a difficult time processing what was going on. And I know that they, you know, part of that defense is what we allowed 15 or 20 minutes, whatever it is, to stay in the room. But how does that change this analysis? Doesn't he have a duty to recognize that he's dealing with, you know, someone who might not be the average individual that he's working with? So while Ms. Close did state, you know, she states, I have Asperger's, I don't process things well. Officer Tan, when he first arrived, he testified that he thought she was just being obstinate and ignoring him. Then she's able to negotiate staying in the room. She's not appearing totally confused by the situation. So objectively, if we look at this, she's in this room, she's telling Officer Tan, I need to stay here. I need to talk to someone right now. And while maybe it's not what you or I would do, Officer Tan objectively is thinking she's just not trying to leave this room. I need, and this is a trespass. She's been asked to leave. And so I think that the fact that she just says that, you know, Officer Tan isn't expected to know what exactly that means. How detailed of a different approach he must take. Instead, objectively, he tries to talk to her for over 20 minutes. Calmly, please leave the room. Let's leave the room. Voluntarily leave the room. Let's not even just stay in the room. I'll go with you out here. He writes down the phone number for her. He tries to take every step he can to assist her in the event that, you know, maybe she was confused. But she does continue to negotiate the situation and address his questions. Talk to the woman on the phone. And also, no one from the medical facility prior to him walking in, as far as he didn't testify to this, no one had alerted him that she can't process things in a certain way. So, objectively, what he knew was what he was encountering in that room. And, again, while she said those two things, they may not have been true for all he knows. Would you agree that if we're looking at factors on what reasonable force was used in the circumstances, that the state of the plaintiff or the state of the victim, however you want to say it, is relevant to that analysis? We get cases like this a fair amount where there's a handicap of one nature or another. And, you know, doesn't the officer have a duty to look at that in context as he's evaluating what the reasonable force is that needs to be used? Well, I think he did. I think that he tried to talk to her, to calmly talk to her, to help her, to try to help her go out of the room, to write down a phone number. He, again, took all of those factors into consideration. And then, you know, this wasn't a situation where any weapons were used or other, you know, more extreme use of force. He took the consideration that she was, you know, an elderly woman in a medical facility. He tried to help her off. You know, he pulled her off the ground to effectuate an arrest. I guess I would agree with you for 95% of what happened here. But I think it's that last bit that he seemed to, whether he lost, you know, became frustrated or just impatient. And unfortunately, as you said, that's what led to the, you know, to the broken arm. I mean, maybe this case would be different if there wasn't a broken arm involved or a fractured arm, to be precise. But it seemed like there was, you know, just a better way maybe to handle that last portion of it. Well, I would also just tell you again that if we look at the facts, if we look at the evidence that was cited to try to create dispute of facts that was put in front of the district court, and this court has it as well, that none of this information about like her arm being pulled up to behind her neck, that's not in the disputed facts. All that was stated was that her arm was maneuvered to her back and an injury occurred. That's not extraordinary or unusual use of force here. He was trying to effectuate the arrest to commiserate with the resistance he was being presented with. And with that, I guess I'll be done until I have further questions sent my way. All right. Thank you for your argument. We'll hear rebuttal. So for rebuttal, I think first I want to touch on disputed facts. Defendant's counsel here is repeatedly saying that there's no disputed facts. But in plaintiff's declaration in support of opposition for summary judgment, she does lay out in detail the way that Tan arrested her. She says that he put she took his her arm and put it up to the level of her neck. She says that she wasn't resisting. She says she didn't resist when he reached for the phone. She says that when he went to arrest her, she wasn't resisting, that when he grabbed her, she went limp. There's there's portions of the body camera here that aren't that aren't visible. Before Officer Tan entered the room that that or sorry, before the body cameras turned on, he entered the room and there was an encounter. During that time in her declaration, she says that he also pinched her to the bone and caused pain. And further, that he began this confrontation in a confrontational and aggressive manner. And are you claiming that that's a that that what is that in and of itself would be excessive force or that just helps your excessive force claim at the end? What does that matter? Well, that's all to get to my next point, which is that this has to be looked at under the totality of the circumstances. The question is not whether the force was necessary to accomplish a legitimate police objective. It's whether the force use was reasonable in light of all the circumstances. And so when Tan started off this encounter being highly aggressive and from her view in her declaration, she says that he would not let her voluntarily leave. And so she shut down. And as Tan continued on the body camera, he's not being polite. He's not being patient and he's giving mixed signals at best. First, he's threatening force. He says, I'm going to make this a bad day for you. This is about to hurt more. And then he sits down and tries to write down a phone number as she has the phone to her here. He throws her into the chair unwarned. Then she falls unconscious to the ground. And as she's sitting on the ground, he's not communicating to her that he's going to arrest her. He's not communicating that she's under arrest. He simply grabs her and throws her out against the door. And I have to touch on resistance really quickly. In this court, there's a there's a spectrum passive to active resistance. Active resistance is fleeing from an officer, which is what happened in Evans V. City of Escondido and things like combating an officer or acting violent. On the other hand, we have passive resistance and a passive resistance. And we've cited a number of cases, Rice, Brian, Forrester. There's other cases that show that failure to comply, immediately comply, fully comply with an officer's demands. Things like that are passive resistance. In Rice, the court said Rice's refusal to exit his car is far closer to the, quote, purely passive protester who simply refuses to stand than the minor, even truly active forms of resistance we have considered in other cases. Defendant's counsel here misconstrues Rice. Rice failed. Sorry, not failed. He refused to exit his car for 10 minutes before they opened the door to remove him. And that's when and they found that that right to be free from that level of force was clearly established. And so this court has continuously held that being uncooperative is not active resistance, it's passive. And finally, you know, this idea of holding a cell phone and being a threat to his safety is totally belied by the body camera footage. In common sense, everyone carries a cell phone. In this court's decision in Winterwood, this court confronted a plaintiff who was holding pencils. And the court basically said just an object that's in everyday usage. If it's not accompanied by some sort of aggressive demeanor or, you know, signs that it will be used belligerently, can't qualify as a weapon. And so there's there's so many facts in this case that defendant is putting forward in the light most favorable to tan. And the court did the same. And that's not the proper standard at summary judgment. And so with that. Oh, please. Yeah, you're over your time. So thank you. That being said, we request a reversal of this of this decision and remand for jury trial. Thank you. Thank you both. Thank you both for your arguments today. And thank you. Thank you for your pro bono representation, which means a lot to the court. The case just argued will be submitted for decision and will be in recess for the afternoon.
judges: Thomas, Watford, Nelson